UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SERGIO SHAW,

                Plaintiff,

v.                                            Case No. 22-cv-62-pp

OFFICER BUTLER,
and NURSE JANE DOE,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS UNNECESSARY PLAINTIFF'S SECOND AND THIRD MOTIONS FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NOS. 6, 8) AND SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

Sergio Shaw, who is incarcerated at Jackson Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants forcibly swabbed his nose to test him for COVID-19. On February 7, 2022, the plaintiff filed an amended complaint. Dkt. No. 5. Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course within" twenty-one days of service or within twenty-one days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). At the time the plaintiff filed the amended complaint, the court had not yet screened the original complaint and had not ordered service on any defendant. The court will screen the amended complaint and treat it as the operative complaint. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. nos. 2, 6, 8, and screens the amended complaint, dkt. no. 5.

1

## I. Motions for Leave to Proceed without Prepaying the Filing Fee (Dkt. Nos. 2, 6, 8)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 8, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $30. Dkt. No. 14. The court received that fee on March 28, 2022. The court will grant the plaintiff's first motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this order. Because the court is granting the plaintiff's first motion for leave to proceed without prepaying the filing fee, the court will deny the plaintiff's other, nearly identical motions because they are unnecessary. Dkt. Nos. 6, 8.

## II. Screening the Amended Complaint (Dkt. No. 5)

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if an incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

At the time the plaintiff filed his original complaint, he was in custody at the Milwaukee County Jail. Dkt. No. 1 at 5. The amended complaint names as defendants Officer Butler and Nurse Jane Doe, whom the plaintiff says were

employed by the "Milwaukee County Jail/Criminal Justice Facility." Dkt. No. 5 at 1-2. The amended complaint alleges that Jane Doe is an employee of WellPath. Id. at 2. (Wellpath is a private company that provides health care services to individuals in correctional institutions. https://wellpathcare.com/about/.)

The plaintiff alleges that on December 27, 2021, between 8:30 and 11:00 a.m., Butler and Jane Doe entered his cell without the approval of a lieutenant, captain or supervising officer. Id. at 2–3. Butler straddled the plaintiff as he lay on his bed. Id. at 2. The plaintiff yelled, "Get off of me. No, [I] don't want to take ANY test," and "You don't have the power, discretion or authority to FORCE any sort of medical procedures on me." Id. Butler allegedly grabbed the plaintiff's left wrist "and smacked [him] on [his] forehead with her free hand." Id. The plaintiff reiterated that he did not want to take any tests. Id. Nurse Doe handed Butler "a used, opened, contaminated Covid-19 nasal swab test," as the plaintiff yelled, "No. Stop. You're hurting me." Id. at 2–3.

The plaintiff alleges that, despite his "begging [and] pleading," Butler "maliscious [*sic*] [and] sadistically jammed the contaminated covid swab stick up [his] nose against [his] protest and against [his] will without any Doctor, or Court Order to do such a thing or to FORCE such a sadistic procedure." Id. at 3. The plaintiff says he initially tested negative for COVID-19. Id. But he asserts that, because the defendants forced a contaminated swab up his nose, he ultimately contracted the virus. Id. The plaintiff alleges that there is video footage of the incident. Id. He says that Butler and Doe told him that he needed to take a COVID-19 test. Id.

The plaintiff asserts that the defendants' actions constituted cruel and unusual punishment, excessive force and deliberate indifference. Id. He seeks

$200,000 in compensatory damages. Id. at 4. He also seeks injunctive relief prohibiting the jail from allowing people who aren't medically trained to administer COVID-19 swab tests and requests that the court terminate the defendants from their positions at the jail or suspend their pay. Id.

C.  Analysis

The court assumes that the plaintiff was a pretrial detainee at the time of the incident, so it reviews his allegations under the Fourteenth Amendment. See Hardeman v. Curran, 933 F.3d 816, 821–22 (7th Cir. 2019) (citing Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)). Under the Fourteenth Amendment, the plaintiff must show "that a defendant's conduct was 'objectively unreasonable.'" Kemp v. Fulton Cty., 27 F.4th 491, 495 (7th Cir. 2022) (quoting Hardeman, 933 F.3d at 824). Stated differently, he must show that the defendants' actions were not "'rationally related to a legitimate non-punitive governmental purpose'" or that they were "'excessive in relation to that purpose.'" Hardeman, 933 F.3d at 822 (quoting Kingsley, 576 U.S. at 398). The plaintiff also must show that the defendants acted "with purposeful, knowing, or reckless disregard of the consequences" of their actions. Miranda v. Cty. of Lake, 900 F.3d 335, 354 (7th Cir. 2018). The court must "focus on the totality of facts and circumstances" that the defendants faced and "gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." Williams v. Ortiz, 937 F.3d 936, 942 (7th Cir. 2019); see Kingsley, 576 U.S. at 397.

The plaintiff alleges that the defendants entered his cell without authorization, pinned him to his bed and forcibly swabbed his nose with a used and contaminated COVID-19 testing swab. He alleges they told him he needed to take the COVID-19 test, but he says that he refused and told them he did

not want to be tested. Courts in this circuit have recognized that COVID-19 may pose an objectively serious risk to a person's health, whether incarcerated or not. See, *e.g.*, Money v. Pritzker, 453 F. Supp. 3d 1103, 1131 (N.D. Ill. 2020); Coates v. Mahoney, No. 20-CV-600-WMC, 2021 WL 1854278, at *2 (W.D. Wis. May 10, 2021). One reasonable measure to decrease the spread among incarcerated persons is frequent testing of incarcerated persons, especially those suspected of being in close contact with someone who has tested positive for the virus. See Simpson v. Vanlanen, No. 19-CV-1222-PP, 2021 WL 4295315, at *5 (E.D. Wis. Sept. 21, 2021) (citing Stevens v. Carr, No. 20-C-1735, 2021 WL 39542, at *4 (E.D. Wis. Jan. 5, 2021)). The defendants had a legitimate, non-punitive reason to test the plaintiff for COVID-19.

But accepting the amended complaint's allegations as true (as the court must at this stage), the defendants' method of obtaining the plaintiff's test may have been "excessive in relation to" that legitimate purpose. As noted in Simpson, 2021 WL 4295315, at *5, the defendants had other options available to attempt to control the spread of the virus among incarcerated persons who refused to be tested for COVID-19. If they thought he was infected, the defendants could have quarantined the plaintiff from other incarcerated persons. Id. They could have asked him to voluntarily take a test. Forcibly swabbing the plaintiff's nose to test him for COVID-19, and allegedly doing so against his will with a used and contaminated nasal swab, arguably was not an objectively reasonable action. The plaintiff alleges that he contracted COVID-19 *because* the defendants forced him to be tested; if true, this suggests that the defendants' actions were not "rationally related to a legitimate non-punitive governmental purpose." Hardeman, 933 F.3d at 822 (quotation omitted). The

6

Case 2:22-cv-00062-PP    Filed 10/17/22    Page 6 of 10    Document 18

court will allow the plaintiff to proceed on this claim under the Fourteenth Amendment.

Because the plaintiff does not know the name of Nurse Jane Doe, he must use discovery to learn her name. Once Officer Butler has responded to the amended complaint, the court will issue a scheduling order setting deadlines for the completion of discovery and for filing dispositive motions. The order also will set a deadline by which the plaintiff must identify the Doe defendant and will provide the plaintiff additional information for identifying her. *The plaintiff MUST NOT start the process for identifying the Nurse Jane Doe until the court has issued a scheduling order.*

### III. The Plaintiff's Letters

The plaintiff filed several letters or requests. Some of these letters address the jail's alleged refusal to file a certified copy of the plaintiff's trust account statement. Dkt. Nos. 9, 10, 12. The court received the plaintiff's trust account statement and denied his motion to compel the defendants to release it. Dkt. No. 14 (denying Dkt. No. 9). The court will not take further action on the plaintiff's letters about his trust account statement.

In another letter titled "Notice of Unlawful Practice In Office" and filed while the plaintiff still was incarcerated at the jail, the plaintiff said that he had been subject to "[n]umerous constitutional violations" while at the jail. Dkt. No. 11. He said he had filed a lawsuit about those violations, which is pending before the court in Shaw v. Milwaukee County Jail, *et al.*, Case 22-cv-45. Id. The plaintiff sought his "immediate release" based on those alleged violations, which he said placed his health, safety and life "under threat and in imm[i]nent-danger." Id. at 2. The plaintiff asked that the court schedule "a Court date as soon as there's an opening or any availability on the Court's

7
Case 2:22-cv-00062-PP   Filed 10/17/22   Page 7 of 10   Document 18

docket." Id. He reiterated that he was "being mistreated, harassed, threated, (sometimes ass[a]ulted), [and] psychologically/medically neglected" because he filed his two lawsuits pending before this court. Id.

To the extent the plaintiff was asking for an injunction ordering his release from the jail, the court did not have the authority to grant that request. At the time he filed the letter, the plaintiff had a pending state court criminal matter for which he was being detained at the jail. See State v. Shaw, Milwaukee County Case 2021CF005087 (available at https://wcca.wicourts.gov/). The only way for him to challenge the fact of his incarceration, or request his release, would have been to file a motion for bond in that case or a petition for a writ of *habeas corpus*. See Heck v. Humphrey, 512 U.S. 477, 481 (1994) (citing Preiser v. Rodriguez, 411 U.S. 475, 488–90 (1973)).

To the extent that the plaintiff was seeking to proceed on a claim alleging that jail officials retaliated against him for filing these lawsuits, that claim is not related to the claim he alleges in the amended complaint. As the court explained in the plaintiff's other case (Case No. 22-cv-45), the plaintiff cannot pursue unrelated claims against different defendants in the same lawsuit. If the plaintiff seeks to pursue the retaliation claim, he must bring it in a new lawsuit and pay a new filing fee. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS UNNECESSARY** the plaintiff's second and third motions for leave to proceed without prepaying the filing fee. Dkt. Nos. 6, 8.

Under an informal service agreement between Milwaukee County and this court, the court will electronically transmit a copy of the amended complaint and this order to Milwaukee County for service on Officer Butler at the Milwaukee County Jail. Under the informal service agreement, the court **ORDERS** Officer Butler to respond to the amended complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$287** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Jackson Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>  Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin
>  362 United States Courthouse
>  517 E. Wisconsin Avenue
>  Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

Dated in Milwaukee, Wisconsin this 17th day of October, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**